UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL GEISLER,<br><br>        Plaintiff,<br><br>    v.<br><br>UNITED PARCEL SERVICE, INC.,<br><br>        Defendant. | Case No. 24-cv-01059-JSC<br><br>**ORDER RE: PLAINTIFF'S MOTION TO REMAND**<br><br>Re: Dkt. No. 16 |

Plaintiff Daniel Geisler sues Defendant United Parcel Service, Inc. (UPS) for claims related to his alleged wrongful termination. (Dkt. No. 3-2.)[1] Before the Court is Plaintiff's motion to remand. (Dkt. No. 16.) Having carefully considered the briefing, the Court concludes oral argument is unnecessary, *see* Civ. L. R. 7-1(b), and DENIES Plaintiff's motion. Defendant has met its burden to demonstrate the Court has subject matter jurisdiction over this matter based on diversity by showing the amount in controversy exceeds $75,000.

**BACKGROUND**

Plaintiff is legally impaired in his left eye. (Dkt. No. 3-2 ¶ 13.) UPS hired Plaintiff in May 2020 as a Personal Vehicle Delivery Driver, a seasonal position requiring a California Class C driver's license. (*Id*. ¶¶ 11, 13, 15.) In October 2020, UPS invited Plaintiff to enroll in UPS's Driver School so he could be hired as a full-time Package Car Driver. (*Id*. ¶ 15(b).) While attending UPS's Driver School, Plaintiff notified UPS of his visual impairment several times. (*Id*.) In November 2020, UPS hired Plaintiff as a Package Car Driver. (*Id*. ¶ 15(c).) In December 2020, after several weeks of delivering packages to customers in the Napa Valley area without

---

[1] Record citations are to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

1  incident, Plaintiff's supervisor called while Plaintiff was driving and directed him to pull over
2  immediately because UPS Corporate Safety had deemed him a safety hazard.  (*Id*. ¶ 15(c), (d).)
3  Plaintiff's supervisor directed Plaintiff to obtain a federal vision exemption from the U.S.
4  Department of Transportation.  (*Id*. ¶ 15(e).)

5        In February 2021, the U.S. Department of Transportation rejected Plaintiff's application
6  for a federal vision exemption because Plaintiff's position did not require him to cross state lines.
7  (*Id*. ¶ 15(f).)  Plaintiff hand-delivered the rejection letter to his supervisor, who said she would
8  follow up about next steps.  (*Id*. ¶ 15(g).)  The supervisor never contacted Plaintiff or returned
9  Plaintiff's calls about the federal exemption or going back to work.  (*Id*.)  To resolve the issue,
10 Plaintiff contacted his union representative, who set up a meeting with UPS's representatives for
11 December 2021.  (*Id*. ¶ 15(g).)  At the December 2021 meeting, UPS reiterated it was Plaintiff's
12 obligation to obtain a federal exemption and an interstate Department of Transportation card to
13 maintain his position, which only required he drive intrastate.  (*Id*. ¶ 15(i).)  Plaintiff claims to
14 maintain his employment UPS essentially instructed him to lie on his Department of
15 Transportation application by saying he was an interstate driver.  (*Id*. ¶ 15(j).)  Seven days after
16 the meeting, UPS terminated Plaintiff.  (*Id*.)

17       Plaintiff brings nine claims against UPS: (1) disability discrimination, (2) failure to provide
18 a reasonable accommodation, (3) failure to engage in an interactive process, (4) retaliation, (5)
19 meal period violations, (6) rest period violations, (7) waiting time penalties, (8) wrongful
20 termination, and (9) whistleblower retaliation.  Defendant removed this case based on diversity
21 jurisdiction. (Dkt. No. 1.)  Plaintiff moves for remand on the grounds Defendant failed to
22 establish the amount in controversy exceeds $75,000.

23 **DISCUSSION**

24       Under 28 U.S.C. § 1332(a), federal courts have subject matter jurisdiction over cases
25 between parties of diverse citizenship when the amount-in-controversy exceeds $75,000.  *Arbaugh*
26 *v. Y&H Corp.*, 546 U.S. 500, 513 (2006); *see also Urbino v. Orkin Servs. of California, Inc.*, 726
27 F.3d 1118, 1121 (9th Cir. 2013) ("To invoke federal diversity jurisdiction under 28 U.S.C. §
28 1332(a), a matter must exceed the sum or value of $75,000." (cleaned up)).  A removing defendant

bears the burden of establishing federal jurisdiction. *Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 847 (9th Cir. 2020). "Where it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003); *see also Urbino*, 726 F.3d at 1121-22 ("Where, as here, it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." (cleaned up)). "The parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (cleaned up). As courts of limited jurisdiction, federal district courts construe the removal statute strictly and reject jurisdiction if there is any doubt as to removability. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

According to the complaint, Plaintiff's demand exceeds $25,000. (Dkt. No. 3-2 at 20.) Plaintiff's demand includes general and special damages, exemplary damages, pre-judgment and post-judgment interest, and attorneys' fees and costs. (*Id*.) "The amount in controversy includes claims for general and special damages (excluding costs and interests), attorney's fees if recoverable by statute or contract, and punitive damages if recoverable as a matter of law." *Finister v. California Check Cashing Stores, LLC*, No. 23-CV-02692-LB, 2023 WL 5170299, at *3 (N.D. Cal. Aug. 11, 2023) (cleaned up). Defendant's notice of removal claims the amount at stake exceeds $75,000 based on Plaintiff's claims for lost wages, emotional distress damages, punitive damages, waiting time penalties, and attorneys' fees. (Dkt. No. 1 ¶¶ 20-26.)

**I. Lost Wages**

"The measure of recovery by a wrongfully discharged employee is the amount of salary agreed upon for the period of service, less the amount which the employer affirmatively proves the employee has earned or with reasonable effort might have earned from other employment." *Andrade v. Arby's Rest. Grp., Inc.*, 225 F. Supp. 3d 1115, 1140 (N.D. Cal. 2016) (cleaned up).

1     Defendant claims "Plaintiff's back pay to date could be as high as $91,840.00 in lost wages
2 alone ($20.50 x 40 hours x 112 weeks)." (Dkt. No. 1 ¶ 20.)  Generally, backpay is calculated from
3 the date of discharge to a hypothetical trial date a year from removal.  *See Finister v. California*
4 *Check Cashing Stores, LLC*, No. 23-CV-02692-LB, 2023 WL 5170299, at *4 (N.D. Cal. Aug. 11,
5 2023).  Plaintiff last worked at UPS as a Package Car Driver on December 21, 2020, and was
6 terminated on December 27, 2021.  (Dkt. No. 3-2 ¶ 14.)  UPS compensated Plaintiff at a rate of
7 $20.50 per hour.  (*Id.*)  So, calculating lost wages from the date of Plaintiff's termination, a
8 conservative estimate of the backpay Plaintiff could reasonably recover is $134,890 ($20.50 x 40
9 hours x 164.8 weeks), consisting of $92,168 ($20.50 x 40 hours x 112.4 weeks) in backpay
10 through removal and $42,968 ($20.50 x 40 hours x 52.4 weeks) in backpay through trial.
11 Calculating lost wages from the day UPS removed Plaintiff from the road, the estimate of the
12 backpay Plaintiff could reasonably recover is $178,596 ($20.50 x 40 hours x 217.8 weeks),
13 consisting of $135,628 ($20.50 x 40 hours x 165.4 weeks) in backpay through removal and
14 $42,968 ($20.50 x 40 hours x 52.4 weeks) in backpay through trial.  *See Arias v. Residence Inn by*
15 *Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) ("[T]he amount in controversy reflects the *maximum*
16 recovery the plaintiff could reasonably recover.").  So, the maximum amount Plaintiff could
17 reasonably recover in lost wages alone exceeds $75,000, no matter whether backpay is calculated
18 from Plaintiff's termination or the date Plaintiff last drove for UPS.
19     Defendant's lost-wages calculation assumes "Plaintiff has been unable to find comparable
20 replacement work."  (*Id.*)  But Plaintiff submitted evidence demonstrating Plaintiff began working
21 at St. Helena Appliance, Inc. on January 11, 2022, and has since been employed there full-time at
22 a rate above $20.50 per hour.  (Dkt. No. 24-1); *see Lamke v. Sunstate Equipment Co., LLC*, 319 F.
23 Supp. 2d 1029, 1033 (considering the plaintiff's mitigation of damages under the preponderance
24 of the evidence test to determine whether the defendant met its burden to prove the amount in
25 controversy) (citing *Riggins v. Riggins*, 415 F.2d 1259, 1261-62 (9th Cir. 1969), which
26 "considered whether the statute of limitations would render the plaintiff's claim less than the
27 jurisdictional amount").  Defendant does not contest Plaintiff's alternative employment; instead,
28 Defendant insists Plaintiff's alternative employment should not be considered in determining the

4

1    amount in controversy because mitigation of damages is an affirmative defense.

2      "Mitigation of damages is an affirmative defense." *Maldonado v. Apple, Inc*, No. 3:16-
3    CV-04067-WHO, 2021 WL 1947512, at *24 (N.D. Cal. May 14, 2021) (citing *Erler v. Five Points
4    Motors*, 249 Cal. App. 2d 560, 561 (Ct. App. 1967)).  The Court is precluded from "considering
5    the merits of [an] affirmative defense to determine the amount in controversy." *Greene v. Harley-
6    Davidson, Inc.*, 965 F.3d 767, 774 (9th Cir. 2020) (concluding "evaluating a potential statute of
7    limitations defense involves a fact-based analysis of the merits" and thus "[t]he district court
8    improperly decided the merits of the case before it could determine if it had subject matter
9    jurisdiction." (cleaned up)).  "[T]he strength of any defenses indicates the *likelihood* of the
10   plaintiff prevailing; it is irrelevant to determining the amount that is at stake in the litigation."
11   *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 928 (9th Cir. 2019); *see also Geographic
12   Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010) ("[J]ust
13   because a defendant might have a valid defense that will reduce recovery to below the
14   jurisdictional amount does not mean the defendant will ultimately prevail on that defense.").  So,
15   Plaintiff's alternative employment is irrelevant to the amount in controversy.

16                  \* \* \*

17     Plaintiff's claim for lost wages exceeds $75,000, to say nothing of Plaintiff's claims for
18   emotional distress damages, punitive damages, waiting time penalties, and attorneys' fees.
19   Additionally, Plaintiff's settlement demand of $199,192.50 and refusal to stipulate the amount in
20   controversy is below $75,000 further support a finding the amount in controversy exceeds
21   $75,000.  (Dkt. Nos. 20 ¶¶ 3-4, 20-1, 22); *see Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir.
22   2002) ("A settlement letter is relevant evidence of the amount in controversy if it appears to reflect
23   a reasonable estimate of the plaintiff's claim."); *Bitt v. Kone Inc.*, No. C 19-7896 SBA, 2020 WL
24   13931381, at *3 (N.D. Cal. Feb. 4, 2020) (reasoning the plaintiff's refusal to stipulate her damages
25   were less than $75,000 undermined her claim the amount in controversy was less than $75,000).
26   So, the amount in controversy meets the jurisdictional threshold.  Defendant has met its burden to
27   demonstrate the Court has subject matter jurisdiction over this matter based on diversity.
28   //

**CONCLUSION**

Accordingly, Plaintiff's motion to remand is DENIED.

This Order disposes of Docket No. 16.

**IT IS SO ORDERED.**

Dated: April 22, 2024

JACQUELINE SCOTT CORLEY
United States District Judge